*Appeal* the properties in question, including mining machines, which are also in issue here, had a useful life of several years, and the Board held them to be capital items and their cost not deductible as expenses.

In the present record, the taxpayer's engineering witness testified that all of the items in question would last more than a year, except for an accident, such as the collapse of the roof of the mine. It also appears that some of this property was used in Mines Nos. 1 and 2 until those mines were exhausted in 1922. The machines were thereafter rebuilt. Some of the cars were used in Mine No. 3. In such circumstances, it is our opinion that their cost should not be deducted so as to reduce taxable net income of the year of purchase, merely because they may serve to maintain production at its existing level. Like all other items of property used in the business of a taxpayer, they are subject to exhaustion, wear and tear, and obsolescence, and if, in a proper case, such exhaustion be measured by the units of production, this would be a normal method of recovering the initial outlay during the period of useful life. The loss by casualty is expressly provided for by a deduction when it occurs, just as the amortization deduction has already been provided for.

We are of opinion, also, that the deduction of the alleged bad debt was properly disallowed by the Commissioner. Whether there ever was a debt on this account owing by Nicoll is doubtful. From the contract it would seem that Nicoll's liability for the purchase price of coal was only a secondary liability, if any. We need not determine that question. Nicoll denied liability. But the coal had been shipped, and the Fuel Administration distributed it through the coal pool of the Lower Lake ports. Just what this was, or how it operated, does not clearly appear, and we can not determine to whom the taxpayer could rightfully look for responsibility for proper delivery. We are told that it could not look to the United States, while, at the same time, it is said that the United States sequestered the coal. However, it was never supposed that the coal was lost. Apparently, the administration of the pool involved some temporary confusion until deliveries and liability could be traced. This was done and the amount was paid almost entirely in little more than a year—not a long time under the circumstances.

---

### APPEAL OF CONKLIN-ZONNE-HARRISON AGENCY, INC.

Docket No. 2492.   Submitted July 1, 1925.   Decided February 3, 1926.

Taxpayer was not a personal service corporation during the fiscal year ended April 30, 1921.

*J. Robert Sherrod, Esq.*, for the taxpayer.
*J. Arthur Adams* and *E. C. Lake, Esqs.*, for the Commissioner.

Before GREEN, TRUSSELL, and MORRIS.

This is an appeal from the determination of a deficiency of $2,313.06 in income and profits taxes for the fiscal year ended April 30, 1921, arising from the refusal of the Commissioner to classify the taxpayer as a personal service corporation.

### FINDINGS OF FACT.

The taxpayer is a Minnesota corporation, engaged in the insurance agency business.

For many years prior to 1912 the Conklin-Zonne-Loomis Co., a corporation, was engaged in the management of office buildings, the placing of loans, and the selling of insurance. In September, 1912, this corporation desired to take in one, J. M. Harrison, who had been in the insurance business for 12 years or more, to handle the insurance department. It was later decided to segregate the insurance business, which resulted in the incorporation of the taxpayer, to which was transferred all of Harrison's insurance business and that of the Conklin-Zonne-Loomis Co., and stock of the par value of $100 was issued therefor as follows:

|  | Shares. |
| --- | --- |
| J. M. Harrison | 100 |
| Conklin-Zonne-Loomis Co | 200 |

In 1918 Harrison received an additional 50 shares of stock, which, together with 35 shares of stock issued to one Sanford prior to that time, resulted in the following stock holdings in the taxpayer during the taxable year in question:

|  | Shares. |
| --- | --- |
| J. M. Harrison | 150 |
| L. W. Sanford | 35 |
| Conklin-Zonne-Loomis Co | 150 |
| Total | 335 |

No cash was paid in for the additional stock issued.

Harrison and Sanford devoted their entire time to the business. Only one sub-agent was employed, whose activities produced a net income of $25 during the taxable year. A solicitor was also employed in order to give him a chance to pay off his creditors, among whom was the taxpayer. He produced approximately $75,000 worth of business out of $329,806.33. About 15 per cent of the total premium volume was written by outside brokers, who were in the same line of business and transferred insurance to the taxpayer in excess of their writing capacity. Other employees included an office force of 13 or 14, consisting of the usual policy writers, bookkeepers, stenographers, and clerks. The cost of the cashier and switchboard operators was shared with the Conklin-Zonne-Loomis Co. The pay

roll of the office for the year ended April 30, 1921, was $20,002.39, in addition to the stockholders' salaries, amounting to $8,828.12. Uncollected premiums remitted to the insurance companies for two typical months during the taxable year in question were 9.8 and 13.7 per cent. Its bad debts were nominal. Renewals constituted approximately 75 per cent of the business.

The balance sheets of the taxpayer as of April 30, 1920 and 1921, were as follows:

|  | Apr. 30, 1920. | Apr. 30, 1921. |
|---|---|---|
| **ASSETS.** | | |
| Cash | $449.51 | $655.35 |
| Trade accounts receivable | 57,207.89 | 66,513.87 |
| Other accounts receivable | 337.50 | 143.03 |
| Liberty bonds and war savings stamps | 4,284.40 | 3,892.79 |
| Minneapolis Underwriters bond | 125.00 | 135.00 |
| Investment | 262.50 | 525.00 |
| Loans and advances to members | 4,597.36 | 5,797.65 |
| Furniture and fixtures | 2,838.41 | 2,932.54 |
| Automobile | 400.00 | |
| Good will | 33,700.00 | 33,500.00 |
| Total | 104,202.57 | 114,095.23 |
| **LIABILITIES.** | | |
| Notes payable | 310.00 | 10.00 |
| Accounts payable | 59,587.73 | 66,446.11 |
| Capital stock | 33,500.00 | 33,500.00 |
| Surplus and undivided profits | 10,804.84 | 14,139.12 |
| Total | 104,202.57 | 114,095.23 |

The accounts receivable included the commissions due the taxpayer, and the accounts payable represented the net amount due the insurance companies at the end of the year. Notes payable of $310 at the beginning and $10 at the end of the fiscal year represented the unpaid portion of a loan which was made to purchase another insurance agency.

The stockholders of the Conklin-Zonne-Loomis Co. were as follows:

|  | Shares |
|---|---|
| A. E. Zonne | 124 |
| G. B. Loomis | 41 |
| J. F. Conklin | 1 |
| Total | 166 |

The stockholders A. E. Zonne and G. B. Loomis devoted all their time to the business of that company. J. F. Conklin, owning one share, did not take an active part in the business but acted in an advisory capacity. This corporation did not own any buildings or realty, but its main source of income was from commissions received on rentals of office buildings and other properties which were managed for its customers. In the course of such real-estate business it was instrumental in placing much insurance business with the

taxpayer. Its balance sheets as of April 30, 1920 and 1921, were as follows:

|  | Apr. 30, 1920. | Apr. 30, 1921. |
|---|---|---|
| **ASSETS.** | | |
| Cash | $1, 661. 16 | $7, 097. 01 |
| Accounts receivable | 37, 138. 79 | 28, 241. 77 |
| Liberty bonds | 21, 550. 00 | 21, 550. 00 |
| Corporate stocks and bonds | 45, 086. 25 | 42, 701. 25 |
| Mortgages receivable | 680. 00 | 480. 00 |
| Life insurance—cash surrender value | 4, 142. 93 | 5, 898. 73 |
| Furniture and fixtures | 1, 939. 94 | 1, 745. 95 |
| Notes receivable—employees | 250. 00 | 250. 00 |
| Due from Conklin-Zonne-Harrison Agency | 3, 000. 00 | 3, 000. 00 |
| Contingent fund | 20. 27 | 33. 83 |
| Manager's fund | 300. 00 | 300. 00 |
| Total | 115, 769. 34 | 111, 298. 54 |
| **LIABILITIES.** | | |
| Accounts payable | 69, 543. 18 | 66, 354. 61 |
| Special reserve | 13, 400. 00 | 13, 400. 00 |
| Capital stock | 16, 600. 00 | 16, 600. 00 |
| Surplus | 16, 226. 16 | 14, 943. 93 |
| Total | 115, 769. 34 | 111, 298. 54 |

Its gross income for the fiscal year ended April 30, 1921, was derived from the following sources:

*Income.*

| | Year ended Apr. 30, 1921. |
|---|---|
| Commissions on rents collected for principals | $49, 467. 44 |
| Commissions on sales and loans | 629. 00 |
| Commissions on coal sales | 1, 551. 43 |
| Interest on bank deposits | 319. 05 |
| Interest on investments and notes receivable | 363. 80 |
| Interest on Liberty bonds | 1, 017. 32 |
| Rentals | |
| Dividends received from: | |
| Boston Block Trust Co. | 250. 00 |
| Minneapolis Real Estate Associates | 1, 000. 00 |
| Share of net income earned by the Conklin-Zonne-Harrison Agency | 3, 000. 00 |
| Total | $57, 598. 04 |

The Commissioner denied the taxpayer personal service classification.

### DECISION.

The determination of the Commissioner is approved. *Appeal of Medbury-Wilson Co.*, 1 B. T. A. 963; *Appeal of Hanley-Ried & Co.*, 2 B. T. A. 315. See also *Appeal of W. J. Perry Corporation*, 1 B. T. A. 788.